**In re David and Ruth HANSON, Debtors.**

**Bankruptcy No. 87–20196–399.**

United States Bankruptcy Court, E.D. Missouri, N.D.

Sept. 20, 1991.

David A. Johnston, Craig A. Van Matre, P.C., Columbia, Mo., for debtors.

J. Joseph Raymond, Office of Sp. Litigation, Tax Div., Dept. of Justice, Washington, D.C.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

This case involves issues arising from the Debtors' Motion to Hold the United States Government in Contempt for seizing the cash value of various life insurance policies under an Internal Revenue Service tax lien after discharge of the tax liability in the Debtors' Chapter 7 Bankruptcy.

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. The parties have stipulated that this is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(B).

### DISCUSSION

This matter comes before the Court on the Motion to Dismiss or for Summary Judgment (the "Dismissal Motion") filed by the Internal Revenue Service (the "IRS") in

**408**

response to the Motion To Hold United States of America In Contempt (the "Contempt Motion") filed by Debtors David and Ruth Hanson (the "Debtors"). On July 30, 1982, the IRS filed a Notice of Federal Tax Lien in Randolph County, Missouri against the Debtors for $6,211.69 in delinquent income taxes for the year 1981. On June 14, 1984, a similar tax lien was filed in Randolph County for $7,885.52 in delinquent taxes for the year 1983. On May 26, 1987, the Debtors filed their Chapter 7 petition. Because the Chapter 7 trustee designated the Debtors' case a "no asset case", the IRS did not file a proof of claim. On October 9, 1987, the Debtors received their discharge in bankruptcy. On December 1, 1989, the IRS filed Notices of Levy and seized the cash value of various life insurance policies owned by the Debtors. The Debtors then filed the instant Contempt Motion, requesting the IRS be held in civil contempt for seizing the cash value of the Debtors' life insurance policies after the Court granted discharge from the 1981 and 1983 tax liabilities.

In response the IRS filed its Dismissal Motion. The IRS argues that its post-discharge levy was appropriate because discharge of the underlying tax liabilities did not require release of the IRS's pre-petition tax lien on the Debtors' life insurance policies. Further, the IRS argues that the Debtors' Contempt Motion is barred by the doctrine of sovereign immunity and that the Bankruptcy Court lacks jurisdiction to hear the Contempt Motion.

The Debtors argue, however, that the IRS's tax liens were invalid because the IRS failed to perfect the liens by giving proper notice to the insurance companies. Accordingly, the Debtors insist that the IRS's seizure of the cash value of the Debtor's insurance policies under these liens was in violation of § 524(a)(2) of the Bankruptcy Code. Alternatively, the Debtors assert that even if the IRS's liens were valid, recovery under the liens should have been limited to the cash value of the policies on the date of filing the Bankruptcy Petition. With respect to the defense of sovereign immunity, the Debtors insist that the IRS waived immunity thereby entitling

the Debtors to pursue a Motion for Contempt.

The initial question in this case is whether the IRS had valid liens on the cash values of the Debtor's life insurance policies. If the liens were valid, the next issue becomes whether the IRS had a continuing lien on post-petition contributions to the insurance policies or whether the liens attached to only the cash value of the policies as of the date of filing the Debtors' Chapter 7 Petition.

## I.   *Perfection of IRS Tax Lien*

■   Under the Internal Revenue Code, every federal tax which is not paid on demand becomes a lien "upon all property and rights to property, whether real or personal, belonging to" the taxpayer. 26 U.S.C. § 6321 (1989). The lien imposed by section 6321 arises at the time unpaid taxes are assessed, 26 U.S.C. § 6322 (1989), and has been described as a secret lien *United States v. Security Trust & Savings Bank,* 340 U.S. 47, 53, 71 S.Ct. 111, 114, 95 L.Ed. 53, (1950) because it is immediately effective against the taxpayer without any need for public notice, *Rice Inv. Co. v. U.S.,* 625 F.2d 565 (5th Cir.1980).

As against certain other entities, however, the lien does not become valid until notice is filed with the State (or county) in which the property subject to the lien is situated, 26 U.S.C. 6323(a) (1989). Section 6323(a) states:

> The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanics lienor, or judgment lien creditor until notice thereof ... has been filed....

Against still other entities, actual notice is required before the federal tax lien is effective. Section 6323(b) sets out those interests against which a federal tax lien is not valid even though notice has been filed. Subsection (b)(9)(A) of section 6323 pertains specifically to the interests of insurance companies and states:

> Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—[w]ith respect to a life

insurance, endowment, or annuity contract, **as against the organization which is the insurer** under such contract, at any time—before such organization had actual notice or knowledge of the existence of such lien; 26 U.S.C. § 6323(b)(9)(A) (emphasis added)

In this case, the Debtors assert that the Government's tax lien was not properly perfected against the cash surrender value of their insurance policies because the IRS failed to give actual notice to the insurance companies of its pre-petition lien.

The plain language of § 6323(b)(9)(A), however, reveals that the protection provided by this section is available only to the "organization which is the insurer under such contract." Case law also supports this reading of the statute. In *U.S. v. Delaware Trust Co.*, 167 F.Supp. 465, 468 (D.C.Del.1958), the court stated "this section making notice a prerequisite to validity of tax lien was ... passed ... as a protection to that class of persons ... who, without notice, would stand to lose in their dealings with property." Notice provisions were not designed to benefit the debtor but to afford protection to those entities holding as security or in some other manner, property of the debtor which is subject to levy.

In *U.S. v. Mandel*, 377 F.Supp. 1274, 1277 (D.C.Fla.1974) a taxpayer and his insurance company challenged the government's ability to reach the cash surrender value of the taxpayer's life insurance policy under a federal tax levy. In *Mandel*, the government levied on the cash value of a taxpayer's life insurance policy and the taxpayer objected, arguing that he had assigned his interests under the policy to his wife and therefore the government's lien on the cash surrender value was no longer valid. The insurance company also argued that it could not be compelled to surrender

the cash value unless the taxpayer himself surrendered the policies or demanded the cash value. The court disagreed with both parties and held that the government's tax assessment lien attached to *Mr. Mandel's right* to the cash surrender value of his policies. The assignment and the interest of the insurance company in the cash value of the policies did not affect the validity of the government's lien because notice of the lien was timely filed. Therefore, the government was entitled to pursue its rights against the taxpayer's property.

In the present case, the IRS filed notice of its tax lien for the 1981 tax obligation in 1982. Notice of its lien for the 1983 tax obligation was filed in 1984. The IRS did not levy on the policies until December, 1989. Accordingly, this Court finds that the IRS had a valid tax lien on the cash surrender value of the Debtors' life insurance policies. Actual notice to the insurance companies as required by "26" U.S.C. § 6323(b)(9)(A) was not a prerequisite for the IRS to recover from the insurance companies that money which the companies were simply holding for the benefit of the Debtors.

## II. *Survival of the IRS Tax Liens After Discharge*

As a general matter, a valid pre-petition lien survives bankruptcy even if the obligation that was the basis for the lien is a dischargeable obligation. *In re Dillard*, 118 B.R. 89, 91 (Bankr.N.D.Ill. 1990); *In re Isom*, 901 F.2d 744, 745 (9th Cir.1990). The IRS concedes that the 1981 and 1983 tax liabilities were dischargeable obligations under the Bankruptcy Code.[1] However, because, the IRS holds a valid pre-petition lien against the cash value of the Debtors' life insurance policies, the IRS has rights against the liened property not-

---

1. Section 523(a)(1)(A) states that a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

    (1) for a tax or customs duty—

      (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;

Section 507(a)(7) taxes are those that are measured by income or gross receipts and for which a return was due at least three years prior to the date of the bankruptcy filing.

In this case, the 1981 and 1983 tax liabilities accrued more than three years prior to the Bankruptcy Petition. Accordingly, the Debtors 1981 and 1983 tax liabilities were discharged.

withstanding the fact that the underlying obligations were discharged. *Dillard,* at 92. Without a lien, the IRS would only have had an unsecured claim against the Debtor's estate. When the IRS took the additional step of obtaining the tax lien, it acquired an additional bundle of rights and became a secured creditor under 11 U.S.C. § 506(a).[2]

Because the 1981 and 1983 tax obligations were discharged, the Debtors assert that the IRS violated the injunction imposed by § 524(a)(2) when it levied upon their insurance policies after date of discharge. Section 524(a)(2) provides:

> (a) A discharge in a case under this title—
>
> .    .    .    .    .
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process or an act to collect, recover or offset any such debt **as a personal liability of the debtor,** whether or not discharge is waived.... 11 U.S.C. § 524(a)(2) (emphasis added).

The language of § 524 specifically speaks of enjoining efforts to collect a debt as a "personal liability" of the debtor. When the IRS obtained its tax lien, it obtained rights against the liened property to secure payment of the underlying tax obligation. These rights were in addition to the rights the IRS had against the Debtors personally, *Dillard,* at 93. While the Bankruptcy discharge prohibited the IRS from collecting this obligation as a personal liability of the Debtors, the discharge did not wipe out the IRS's valid pre-petition lien. Thus, the IRS was entitled to pursue its *in rem* rights against the liened property. To the extent the IRS's claim was secured by the liened property, the obligation survived discharge and the IRS was entitled to enforce its claim against the liened property even after the date of discharge. *Dillard,* at 93.

## III.  *Extent of the IRS Lien*

■ In the instant case, the cash value of the Debtors' life insurance policies was $2,129.55 on the date of filing. The Debtors, however, made post-petition contributions to their insurance policies, resulting in a cash value of $4,146.69 on the date of levy.

Because the IRS's lien survived discharge only to the extent the claim was secured, the critical question becomes "to what extent was the IRS's claim secured?" The answer to this question turns on *when* one is to measure the value of property securing an obligation. The IRS argues that the value of security should be measured at the time the IRS liquidates its claim, thus giving the IRS the benefit of all appreciation in, and contributions to the security. The Debtors, however, assert that valuation should be made on the date of filing so that all appreciation in the value of the property inures to the benefit of the debtor.

■ "It is now well-settled that a secured creditor's interest in property is determined as of the date of filing of the petition for relief." *In re Frengel,* 115 B.R. 569, 572 (Bankr.N.D.Ohio 1989) Under § 506(a) the value of property securing a claim "shall be determined in light of the purpose of the valuation, and of the proposed disposition or use of such property ...." 11 U.S.C. § 506(a) Thus, while a secured creditor may be entitled to the market value appreciation in its collateral when the property is being evaluated for the purposes of an ordinary foreclosure, it would be inequitable for a secured creditor to receive the benefit of voluntary cash contributions to the collateral when those contributions are made after discharge of the underlying debt. Accordingly, in the instant case, the extent to which the IRS should recover on its secured claim should be determined by the cash value of the life

---

**2.** 11 U.S.C. 506(a) states: An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim *to the extent of the value of such creditor's interest in the estate's interest in such property* ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.... (emphasis added)

insurance policies as measured on the date of filing. All voluntary post-petition cash contributions should, therefore, inure to the benefit of the debtor. Accordingly, it is

ORDERED that the IRS's Motion to Dismiss or for Summary Judgment is granted in part in that the IRS is entitled to recover under its 1981 and 1983 tax liens the cash value of the Debtors' life insurance policies as measured on the date of filing;

IT IS FURTHER ORDERED that the IRS turnover to the Debtors all monies seized under its 1981 and 1983 liens in excess of the cash value of the policies on the date of filing;

IT IS FURTHER ORDERED that Debtors' Motion to Hold the United States in Contempt is denied.[3]

---

3. Since the Court finds that the IRS was not in contempt, we do not need to reach the issue of sovereign immunity.