In re Edward W. ENGLANDER and Phyllis S. Englander, Debtors.

Edward W. ENGLANDER and Phyllis S. Englander, Plaintiffs,

v.

FIRST UNION NATIONAL BANK OF FLORIDA and United Fidelity Life Insurance Company, Defendants.

Bankruptcy No. 90–03798–6J7.
Adv. No. 95–176.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Dec. 20, 1995.

As Amended Nov. 22, 1996.

David E. Peterson, Orlando, Florida, for First Union National Bank of Florida.

F. Dean Hewitt, Orlando, Florida, for United Fidelity Life Insurance Company.

*FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON CROSS MO-TIONS FOR SUMMARY JUDGMENT*

KAREN S. JENNEMANN, Bankruptcy Judge.

This adversary proceeding came on for hearing on September 21, 1995, on First Union's Motion for Summary Judgment ("First Union's Motion") (Doc. No. 1B), filed by First Union National Bank of Florida ("First Union"), the Debtor's Amended Cross Motion for Summary Judgment ("Debtors' Motion")[1] (Doc. No. 11), filed by Edward W. Englander ("Mr. Englander") and Phyllis S. Englander ("Mrs. Englander") (together, the "Debtors") and First Union's Response to Debtors' Cross Motion for Summary Judgment (the "Response") (Doc. No. 12). The Motions and Response relate to the Complaint to Determine Nature, Extent, Validity and Priority of Interest in Property (the "Complaint") (Doc. No. 1) filed by the Debtors. The Complaint requests a determination of the extent of the Debtors' interest in the cash value of a life insurance policy which was assigned as collateral for a loan held by First Union. After reviewing the pleadings and evidence presented and considering the arguments of counsel and applicable law, the Court partially grants and partially denies First Union's Motion and partially grants and partially denies the Debtors' Motion.

*Background.* No dispute exists regarding the facts. On December 28, 1984, Mr. Englander obtained from Atlantic National Bank of Florida ("Atlantic Bank") a loan in the amount of $336,000 (the "Loan") (Claim No. 3). As security for the Loan, Mr. Englander executed, *inter alia,* an Assignment of Life Insurance Policy as Collateral (the "Assignment") (Exhibit B to Complaint) in favor of Atlantic Bank with respect to a policy of life insurance previously issued by United Fidelity Life Insurance Company ("United Fideli-

Nicholas B. Bangos, Orlando, Florida, for Debtors/Plaintiffs.

1. First Union's Motion and Debtors' Motion are sometimes collectively referred to as the "Mo-

tions."

**328**

ty"), Policy No. DL0105099 (the "Policy"). The Policy provided a death benefit of $250,000 and accumulated a cash value during the life of the Policy (Exhibit A to Complaint). The Assignment gave Atlantic Bank the sole right to receive proceeds from the Policy regardless of whether the claim arose by death, maturity, or a request for a surrender of the accumulated cash value. First Union ultimately obtained and is the holder of Atlantic Bank's interest in the Loan, the Policy and the Assignment.

*Bankruptcy.* On September 27, 1990 (the "Petition Date"), the Debtors filed their petition under Chapter 7 of the Bankruptcy Code. On October 12, 1990, Debtors filed their Schedules and Statement of Affairs (the "Schedules") (Doc. No. 8). Although First Union was listed as a creditor, the Policy was not reported as an asset in the Schedules or any subsequent amendments. Nor did the Debtor attempt to claim the Policy as exempt property.

Mr. Englander continued to pay the premiums due on the Policy after the Petition Date. On February 27, 1991, an order was entered granting Debtors' discharge.

The cash value of the Policy on the Petition Date was approximately $12,000. By 1995, the cash value had increased to approximately $29,000. The current balance of the Loan is $144,011.98 (Doc. No. 6). As to the $17,000 increase in cash value, the parties did not distinguish between the increase in value due to the accrual of interest on the cash value on the Policy as of the Petition Date (the "Interest Appreciation") and the increase in value due to the post-petition payments made by the Debtors and associated interest (the "Payment Appreciation").

On October 25, 1990, First Union filed a Proof of Claim (the "Proof of Claim") (Claim No. 3) for $3,069,840.04 representing various unsecured and secured debts which included the Loan. The Policy was not specifically listed in the Proof of Claim as collateral for any debts. On July 30, 1991, an order was entered (the "Claim Order") on the Trustee's Objection to the Proof of Claim which allowed the secured and unsecured claims of First Union but which did not describe or limit the nature of any collateral available to satisfy secured claims (Doc. No. 130).

*Stay Relief Motion.* On April 21, 1995, First Union filed a Motion for Relief from Stay (the "Stay Relief Motion") (Doc. No. 295) seeking approval to enforce its security interest in the Policy. The Debtor did not oppose this motion, and the Chapter 7 Trustee, George Mills, (the "Trustee") consented to the Stay Relief Motion agreeing that the estate had no interest in the Policy. On May 17, 1995, an Order Approving Agreement for Relief from Stay (the "Stay Relief Order") (Doc. No. 301) was entered allowing First Union to proceed *in rem* against the Policy.

*The Complaint.* In response to the Stay Relief Order, on June 21, 1995, the Debtors filed the Complaint naming First Union and United Fidelity as defendants. The Complaint seeks a determination that First Union has no interest in the Policy [2] or, alternatively, that First Union's interest is limited to the cash value of the Policy on the Petition Date.[3]

*Arguments of the Parties.* The sole issue raised is whether First Union has a valid lien encumbering the full cash value of the Policy. Debtors first argue that First Union has no security interest in the Policy because First Union's Proof of Claim failed to indicate that the Loan was secured by the Policy. Second, Debtors argue that First Union misled them by allowing Debtors to continue paying the premiums on the Policy after the Petition Date and that, therefore, First Union should

---

**2.** The Complaint alleges that the Assignment was defective because Mrs. Englander, as beneficiary of the Policy, did not consent to the Assignment. Debtors, however, did not pursue this argument at the hearing on the Motions and have not otherwise disputed the validity of the Assignment. In any event, the Assignment appears to be an enforceable assignment of the Debtor's interest in the Policy.

**3.** Both First Union and United Fidelity filed Answers and Counterclaims (the "Counterclaims") to the Complaint. First Union's counterclaim requests enforcement of the Assignment (Doc. No. 1C), and United Fidelity's counterclaim makes a claim for interpleader (Doc. No. 10). Although neither of the Counterclaims is addressed in the Motions, both Counterclaims are resolved by the disposition of the Motions.

be estopped from asserting a secured claim against the Policy relying upon *In re Hanson,* 132 B.R. 406 (Bankr.E.D.Mo.1991). Third, Debtors argue that to the extent that First Union has a valid lien encumbering the Policy, the lien does not extend to Payment Appreciation infused by the Debtors after the Petition Date relying upon *First Nat'l Bank of Atlanta v. Willis (In re Jones),* 908 F.2d 859 (11th Cir.1990). In response, First Union relies on *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), arguing that the Debtors are attempting to strip down First Union's lien on the cash value of the Policy and that such a remedy is unavailable under *Dewsnup.*

■ *Standard of Review.* Pursuant to Federal Rule of Civil Procedure 56, which is applicable under Federal Rule of Bankruptcy Procedure 7056, the court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56 (1987). The burden of establishing the right to summary judgment is on the moving party. *Fitzpatrick v. Schiltz (In re Schiltz),* 97 B.R. 671, 672 (Bankr.N.D.Ga.1986), and cases cited therein. Thus, initially, each movant carries the same burden. In determining entitlement to summary judgment, the court must "view all evidence and make all reasonable inferences in favor of the party opposing" the motion. *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir.1995), *citing, Dibrell Bros. Int'l., S.A. v. Banca Nazionale Del Lavoro,* 38 F.3d 1571, 1578 (11th Cir.1994). In this case, both parties have filed cross motions for summary judgment and agree no factual dispute exists which would preclude entry of a final judgment.

■ *Lien Encumbers Policy.* Although not precisely articulated by Debtors, they suggest that the Claim Order somehow limits the effectiveness or scope of the collateral to which First Union may look for recovery. However, nothing in the Claim Order in any way limits First Union's recovery to any particular collateral. Indeed, as soon as the automatic stay was lifted on May 17, 1995, the Claim Order authorized First Union to pursue *in rem* actions against any and all of

the collateral securing the repayment of the Claim. One part of First Union's collateral package is the Policy. As such, Debtors' argument that the Claim Order precludes First Union from pursuing its security interest against the Policy is without merit.

■ *First Union is Not Estopped from Pursuing Policy.* Debtors next argue that, based upon the rationale articulated in *Hanson,* First Union is estopped from asserting a secured claim against the Policy. The Debtors' argument is that, because First Union did not inform the Debtors earlier of their intent to pursue the Policy, the Debtors were misled into making premium payments after the Petition Date. The decision in *Hanson* was based on equitable principles involving the specific facts present in that case. Similar equities are not present in the instant case. Here, First Union is merely asserting its legal rights as a secured creditor and has never induced the Debtors to make any payment. Indeed, the most credible reason for First Union's delay in pursuing the Policy is that they simply forgot its existence due to the confusion in acquiring the complicated loan and collateral package from the original lender, Atlantic Bank. As such, no ill intent is present, and First Union is not estopped from pursuing its legal rights to the Policy.

■ *Lien Does not Encumber Payment Appreciation.* Pursuant to Section 552 of the Bankruptcy Code and the ruling of the Eleventh Circuit Court of Appeals in *Jones,* the Debtors assert that First Union's lien simply does not extend to the Payment Appreciation which would include any payments made by the Debtors after the Petition Date and any interest accrued thereon. Section 552(a) provides that property acquired by the estate or the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor *before* the commencement of the case. Section 552(b)(1) provides an exception however if "proceeds, product, offspring or profits" are generated after a bankruptcy filing by secured collateral encumbered by a prepetition security agreement. For example, interest earned postpetition on a certificate of deposit subject to a prepetition secu-

rity interest is subject to the creditor's lien even though the interest was generated postpetition. Oppositely, monies deposited in a bank account after a bankruptcy filing are not subject to the creditor's prepetition lien because the monies are not "proceeds, produce, offspring, or profits" of the secured collateral but rather constitute new collateral.

In *Jones,* the issue was identical to the issue raised in this adversary proceeding: whether the creditor's security interest extends to the increase in the cash surrender value of the debtor's life insurance policy attributable to the subsequent payment of premiums on the policy after the commencement of the case. 908 F.2d at 859. The facts also are similar. The creditor, First National Bank of Atlanta, held an assignment of the debtor's whole life insurance policy. After filing a voluntary Chapter 11 petition, the debtor continued making postpetition premium payments on the insurance policy. Ultimately, the case converted to a Chapter 7 proceeding, and the Chapter 7 Trustee asserted the estates' interest in the appreciation of the policy's value attributable to the debtor's postpetition premium payments. The Eleventh Circuit Court of Appeals, affirming both the District Court and the Bankruptcy Court, held that the secured creditor's lien arising by virtue of the assignment did not extend to any appreciation attributable to the postpetition premiums paid and rejected the creditor's argument that the exception set forth in Section 552(b)(1) was applicable. In ruling, the Court held that "[t]he increased cash surrender value of the life insurance policy is not any form of 'proceeds, product, offspring, or profits' within the meaning of Section 552(b). In other words, the subsequent premium payments . . . was (sic) property of the estate and such funds are not subject to First Atlanta's lien." 908 F.2d at 861.

■ Here, the Loan and Assignment were executed by the Debtor prior to the Petition Date. Therefore, the lien arising from the Assignment encumbering the Policy does not extend to any interest of the Debtors or their estate acquired *after* the Petition Date unless the exception for "proceeds, product, off-

spring, or profits" set forth in Section 552(b) is applicable. The Eleventh Circuit in *Jones* specifically has held that the a secured creditor's lien on the cash value of life insurance policies does not extend to postpetition premiums paid. As such, First Union's lien does not encumber the Payment Appreciation. However, consistent with the exception of Section 552(b)(1), First Union is entitled to receive any interest accrued on the cash value of the Policy after the Petition Date—the Interest Appreciation.

First Union argues that *Jones* is distinguishable because the party asserting the claim was the Chapter 7 trustee and not the debtor. The difference in parties has no legal significance and is not a basis to refrain from following the binding opinion of the Eleventh Circuit Court of Appeals.

Further, First Union argues that the Eleventh Circuit would have decided *Jones* differently in light of the subsequent United States Supreme Court opinion of *Dewsnup.* In *Dewsnup,* the issue was whether a debtor could reduce a creditor's lien to the value of the collateral as of the petition date and receive the benefit of subsequent appreciation of the value of the property. The Supreme Court held that the creditor was entitled to any increase in value and limited the debtor's ability to "strip-down" liens. However, the *Dewsnup* decision did not address the issue of the extent of a creditor's lien pursuant to Section 552 which is directly raised in this adversary proceeding. In this case, Debtors are not trying to "strip down" First Union's lien but, instead, are trying to determine whether First Union's lien extends to the postpetition Payment Appreciation. The Eleventh Circuit Court of Appeals has answered this question in *Jones.* The *Dewsnup* analysis is simply not applicable. Accordingly, the Debtors are entitled to receive the Payment Appreciation. First Union is entitled to receive the cash surrender value of the Policy and the Interest Appreciation accruing after the Petition Date.

In accordance with the foregoing, First Union's Motion for Summary Judgment is partially granted and partially denied. The

Debtors' Motion is partially granted and partially denied. The disposition of the Motions renders the Counterclaims moot. Accordingly, a Final Judgment will be entered in accordance with this order. To the extent that the parties cannot determine an allocation between the Payment Appreciation and the Interest Appreciation, the Court retains jurisdiction to resolve the dispute.