**UNITED STATES of America, Plaintiff**

v.

**Stephen D. ROGERS, et al., Defendants.**

**No. 1:03 CV 1981.**

United States District Court,
N.D. Ohio,
Eastern Division.

March 21, 2008.

Thomas P. Cole, U.S. Department of Justice—Tax Division, Washington, DC, Annette G. Butler, Cleveland, OH, for Plaintiff.

Paul P. Psota, Brent M. Buckley, Buckley King, Cleveland, OH, Harry W. Burton, Jessica R. Bernanke, Morgan, Lewis & Bockius, Washington, DC, for Defendants.

*ORDER*

SOLOMON OLIVER, JR., District Judge.

Pending before the court are: (1) Defendants Stephen Rogers, his current wife, Robin Rogers, and his ex-wife, Barbara Anne Rogers' (jointly, "Defendants") Motion to Strike Certain Declarations Submitted in Opposition to Summary Judgment ("Motion to Strike") (ECF No. 96); (2) Plaintiff United States' ("Plaintiff" or "IRS") Motion to Supplement Affidavits Filed in Support of Plaintiff's Opposition to Summary Judgment, *Instanter* ("Motion to Supplement Affidavits," ECF No. 103); and (3) Defendants' Motion for Summary

Judgment. (ECF No. 81.) For the foregoing reasons, the court denies the Motion to Strike, grants in part and denies in part the Motion to Supplement Affidavits, and denies the Motion for Summary Judgment.

## I. DEFENDANTS' MOTION TO STRIKE

Defendants move to strike all or portions of the declarations submitted by Plaintiff in support of its Opposition to Defendants' Motion for Summary Judgment. Specifically, Defendants move to strike the following declarations for failure to comply with Federal Rules of Civil Procedure Rule 56(e):

- The declaration of Plaintiff's counsel, Gary L. Bloom ("Bloom") (ECF No. 93, Ex. 14);
- Paragraphs 5 and 8 of Plaintiff's trial counsel, Alejandro L. Bertoldo ("Bertoldo") (ECF No. 93, para. 5 and 8); and
- The declaration of IRS Revenue Officer, Alan W. Ambuehl ("Ambuehl") (ECF No. 93, Ex. 17.)

Defendants' primary objection to the declarations of Bloom, Bertoldo, and Ambuehl is that they lack personal knowledge and the declarations contain hearsay. (*See* Def.'s Mot. to Strike at 2, 7, 9.) Additionally, Defendants argue that the declarations should be stricken because they fail to identify or attach the alleged records that support the statements made in the declarations. For the foregoing reasons, the court finds that Defendants' arguments are not well-taken.

 First, while it is true that affidavits or declarations submitted in support of a motion for summary judgment must be made on personal knowledge, the declarations of Bloom, Ambuehl, and Bertoldo all state that they have in their possession, or have access to, the administrative files of the Internal Revenue Service ("IRS") re-

lated to Stephen and Barbara Anne Rogers. IRS representatives are allowed to rely on official IRS records to show the occurrence of events recorded therein, such as Certificates of Assessments and Payments (frequently identified as Forms 4340) and computer transcripts. Federal Rule of Evidence ("Rule") 802(6) states that records of regularly conducted activity are exceptions to hearsay when accompanied by "the testimony of the custodian or other qualified witness ..." Fed. R.Evid. 802(6). The declaration of a government attorney stating that he has IRS certificates in his possession is sufficient to establish the attorney as a qualified witness under Rule 802(6). *See United States v. Garratt*, No. 02–71165, 2003 WL 23269562, *4–5, 2003 U.S. Dist. LEXIS 24244, *13–14 (D.Mich.2003). Furthermore, records kept in the regular course of business of public agencies may be admissible under the business records exception of Rule 803(6), as well as under the public records exception of Rule 803(8). *See United States v. Griffin*, 191 F.3d 453, 1999 WL 775912, *2 (6th Cir.1999) (holding official IRS documents, including those generated by computer, are admissible as public records).

Secondly, Defendants' argument that the declarations should be stricken because they fail to identify or attach the records the declarants relied upon is essentially moot. Specifically, the court, for the reasons stated below in Section II, grants in large part Plaintiff's Motion to Supplement Affidavits. Since Plaintiff's Motion to Supplement Affidavits specifically identifies the records upon which the IRS relies and submits the records to the court, Defendants' concern regarding the records no longer remains. Accordingly, Defendants' Motion to Strike is denied for the above-stated reasons.

## II. PLAINTIFF'S MOTION TO SUPPLEMENT AFFIDAVITS

Plaintiff filed a Motion to Supplement the declarations of Bloom, Ambuehl, and Bertoldo to identify the records upon which they relied and to submit the records to the court. Defendants oppose Plaintiff's Motion to Supplement Affidavits. (*See* Reply Mem. in Support of Mot. to Strike Decls. and Mem. in Opp'n to Pl.'s Mot. to Supp. Affidavits, ECF No. 106.) First, Defendants state that the documents should be stricken because they are not made on personal knowledge. For the same reasons discussed above in Section I, the court finds that this argument lacks merit.

Second, Defendants object to some of the records upon which the declarants rely for the following reasons:

- Exhibit L of Bloom's supplemental declaration, the "Affidavit of Gerald Mackey," is not an affidavit because it is not subscribed by Mr. Mackey as true under penalty of perjury, as required by 28 U.S.C. Section 1746, nor is it a sworn declaration. (*Id.* at 6.)

- Exhibit K to Bloom's supplemental declaration "does not in any decipherable way" evidence that Aero was a partner in Park for tax years 1983, 1984, and 1985 as alleged in Bloom's original declaration at paragraph 28. Bloom does not even attempt to explain the "undecipherable codes" in Exhibit K, nor has he revealed the basis for any competency to do so. (*Id.* at 5–6.)

- Exhibit N of Bloom's supplemental declaration "does not in any decipherable way" evidence that Park executed a consent to extend the time to assess tax for the 1984 and 1985 tax years. Bloom does not even attempt to explain the "undecipherable codes" in Exhibit K, nor has he revealed the basis for any competency to do so. (*Id.* at 5–6.)

- Exhibit 21 of Bertoldo's supplemental declaration, which is a certified copy of the Agreed Decision and a Stipulation of Partial Settlement in the tax court case of Stephen D. and Barbara D. Rogers, should be stricken because "the Stipulation of Partial Settlement explains that the Agreed Decision relates to the Rogers' investments in *Gila Investors and Kachina '81 Investors* for tax years 1981 and 1982," and the IRS "admitted in discovery that it is not seeking judgment in this action for assessments related to Gila Investors and Kachina." (*Id.* at 7.)
- Exhibit A of Ambuehl's supplemental declaration, the IRS Certificate of Official Record which evidences the Notice and Demand for the 1983 tax year, does not explain how the "indecipherable code" evidences a notice and demand. (*Id.* at 8.)
- Ambuehl's amended declaration stating the alleged balance owed on tax liens at issue in this action, which includes interest, differs from the amount alleged in Ex. B, which states the alleged balance owed, including interest.

■ The court finds that Defendants' objection to the Mackey affidavit is well-taken, and the court therefore denies Defendants' Motion to Supplement Affidavits on this ground. However, the court finds that the remainder of Defendants' objections to the records lack merit. Specifically, the "Certificate of Official Record" cover pages of Exhibits K and N of the Bloom supplemental declaration and Exhibit A of the Buehl supplemental declaration state that the records are official IRS transcripts, and Bloom's amended declaration and Ambuehl's amended declaration explain the meaning and significance of the "indecipherable codes" in the redacted records. Furthermore, Defendants' objection to Bertoldo's supplemental declaration, Exhibit 21, is not well-taken because the February 14,

1994, Agreed Decision pertains to CD–EMC Equipment Leasing, while only the August 14, 1992 Stipulation of Partial Settlement pertains to Gila Investors and Kachina. Finally, the difference in the alleged amount (including interest) owed as stated in Ambuehl's supplemental declaration and the alleged amount (including interest) owed in Ex. B arises from the fact that the amount in the supplemental declaration was computed through May 15, 2005, while the amount reflected in Exhibit B is based on the amount (including interest) owed as of June 30, 2004.

Moreover, the court finds that Defendants will not suffer prejudice as a result of this order because none of Plaintiff's records were submitted to support arguments that were not raised in Plaintiff's Opposition for Summary Judgement. Additionally, Defendants had, and took advantage of, the opportunity to fully raise substantive arguments to Plaintiff's Motion to Supplement. Accordingly, for the above-stated reasons, the court grants in part and denies in part Plaintiff's Motion to Supplement.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Facts

#### *1, Tax Years 1982, 1983, 1984, 1985, 1987 and 1991*

Plaintiff filed this action on September 22, 2003, to foreclose federal tax liens against Stephen Rogers, Barbara Anne Rogers, and/or Robin Rogers's interests in the Major League Baseball Players Benefit Plan. ("Pension Plan," Compl. at 1, ECF No. 1.) The IRS states that a delegate of the Secretary of the Treasury made timely assessments against Stephen and Barbara Anne Rogers for joint income tax years 1982, 1983, 1984, 1985, and 1987,

and against Stephen Rogers for his individual tax liability in 1991. (Compl. ¶¶ 7–12; Pl.'s Oppn, Exs. 3, 4, 5, 6, 8.) Plaintiff alleges that Notices of Assessments and Demand for Payment were timely sent for all the tax years at issue, that Stephen and Barbara Anne Rogers failed or refused to fully pay the assessments against them, and that liens arose and attached to all property and rights of property of Stephen and Barbara Anne Rogers. (Compl. ¶ 13, Ambuehl Decl. and Supp. Decl.) Notices of levies for the tax years at issue were sent to the Pension Plan, and Notices of the federal tax liens were filed with the County Clerk in Tulsa, Oklahoma. (*Id.* ¶ 14; Def.'s Mot. for Summ. J., Exs. I–A, I–B, I–C, I–D, 3–A, 3–B, 3–C, 3–D.) As of the dates of the assessments, Stephen and Barbara Anne Rogers had interests in the Pension Plan. (Compl. ¶ 13.)

### 2. Pension Plan

Stephen Rogers made his Major League Baseball debut for the Montreal Expos on July 18, 1973, where he played until 1985. During Stephen Rogers's time playing Major League Baseball, he vested in the Pension Plan, which is an Employee Retirement Income Security Act of 1974 ("ERISA") qualified defined benefit plan. The Pension Plan is to pay benefits to Stephen Rogers in accordance with its terms set forth most recently in the amended plan executed on December 10, 2004. The assets of the Pension Plan are held in a trust under a trust agreement most recently amended on April 1, 1997. (*See* ECF No. 93, Pl.'s Opp'n to Summ. J., Exs. 1–2, filed manually.) Stephen Rogers is a member of Class IX under the Pension Plan for purposes of defining his benefits and was credited with eleven years of service for purposes of the Pension Plan.

### 3. Divorce and Remarriage

Stephen Rogers and Barbara Anne Rogers divorced on November 30, 1989. On February 1, 1991, Barbara Rogers was issued a Qualified Domestic Relations Order ("QDRO") by the Probate Court of Oklahoma, which was sent to the Pension Plan. (*See* Pl.'s Opp'n, Ex. 9.) The QDRO awarded Barbara Anne Rogers a one-half interest in Stephen D. Rogers's Pension Plan benefits that had accrued as of November 30, 1989. Stephen Rogers later married Robin Rogers, his current wife, and named her as his survivor beneficiary of the Pension Plan.

### 4. Bankruptcies of Stephen Rogers and Barbara Anne Rogers

On February 13, 1996, Stephen Rogers filed a petition for relief under Chapter 7 of the Bankruptcy Code. Stephen Rogers filed schedules claiming his interests in the Pension Plan as property exempted from the bankruptcy estate and valuing his interest in the Pension Plan at $0. (*See* Defs.' Summ. J. Mot., Ex. 6–D.) On February 26, 1996, Barbara Anne Rogers filed a petition for relief under Chapter 7 of the Bankruptcy Code. She also filed schedules claiming her interests in the Pension Plan as property exempted from the bankruptcy estate and valuing her interest in the Pension Plan at $0. (*Id.,* Ex. 7–D.) On June 6, 1996, Stephen Rogers received a discharge under the Bankruptcy Code. (*Id.,* Ex. 6–C.) On June 27, 1996, Barbara Anne Rogers received a discharge under the Bankruptcy Code. (*Id.,* Ex. 7–C.)

## B. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Macy v. Hopkins County Sch. Bd. of Educ.,* 484 F.3d 357, 363 (6th Cir.2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89

L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c)). The moving party "bears the burden of demonstrating that there are no genuine issues of material fact, which 'may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case.'" *Macy,* 484 F.3d at 363 (citations omitted). In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. *GMC v. Lanard Toys,* 468 F.3d 405, 412 (6th Cir.2006). Rather, "the evidence should be viewed in the light most favorable to the non-moving party." *Id.* (citation omitted).

### C. LAW AND ANALYSIS

In their Summary Judgment Motion, Defendants argue that there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law because: (1) the prerequisites to each of its alleged assessments against Stephen Rogers and Barbara Anne Rogers have not been met; (2) Plaintiff's alleged assessments against Stephen Rogers and Barbara Anne Rogers for income tax years 1982, 1983, 1985 and 1987 were untimely; (3) the time to collect the alleged tax year 1991 liability of Stephen Rogers has expired; (4) the prerequisites to each of its alleged tax liens against the interests of Stephen Rogers and Barbara Ann Rogers in the Pension Plan have not been met; (5) the U.S. Bankruptcy Court, Northern District of Oklahoma, discharged each of Plaintiff's underlying assessments in this action and released Stephen Rogers and Barbara Anne Rogers from personal liability; (6) the Pension Plan interests of Stephen Rogers and Barbara Anne Rogers were exempted from their bankruptcy estates and are not liable for any alleged tax lien because no pre-bankruptcy notice of federal lien continues to exist; (7) the Pension Plan interests are subject to unperfected tax liens; (8) the Pension Plan in-terests are subject to released tax liens; (9) if any tax liens remain, they have no value; and (10) any remaining liens cannot be foreclosed against the Pension Plan interests of Robin Rogers. For the reasons set forth below, the court finds that these arguments are not well-taken, and the court therefore denies Defendants' Motion for Summary Judgment.

*1. Validity of Assessments in Tax Years 1982, 1983, and 1985*

Defendants argue that the assessments for tax years 1982, 1983, and 1985 are invalid because Plaintiff fails to establish that it fulfilled the prerequisites to each of its alleged assessments. Plaintiff states that it complied with IRS procedures in regard to the assessments.

 In determining whether the IRS's tax assessments are valid, "Certificates of Assessments and Payments are generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made." *Gentry v. United States,* 962 F.2d 555, 557 (6th Cir.1992). The Certificates of Assessments and Payments "can constitute proof of the fact that the assessments were actually made." *Hughes v. United States,* 953 F.2d 531, 535 (9th Cir.1992). If a taxpayer does not present evidence to the contrary, the court "may properly rely on the forms to conclude that valid assessments were made." *Guthrie v. Sawyer,* 970 F.2d 733, 737–738 (10th Cir.1992); *see also Geiselman v. United States,* 961 F.2d 1, 6 (1st Cir.1992), *cert. denied,* 506 U.S. 891, 113 S.Ct. 261, 121 L.Ed.2d 191 (1992).

Here, Plaintiff points to evidence in the record, namely Certificates of Assessments and Payments (frequently identified by the IRS as Forms 4340), that are prima facie evidence that the assessments were made in accordance with the procedures mandated by the Internal Revenue Code. (*See*

Pl.'s Opp'n, Exs. 3, 4, 5, 6, and 8.) Plaintiff's assessments are entitled to a presumption of correctness. Significantly, the Sixth Circuit in *Sinder v. United States,* 655 F.2d 729, 731 (6th Cir.1981), noted that "the burden on the taxpayer is not merely a burden of producing evidence; it is a burden of persuasion by the preponderance of the evidence that the assessment is not correct." *See also United States v. Walton,* 909 F.2d 915, 919 (6th Cir.1990); *United States v. Grable,* 1991 WL 202620, *2, 946 F.2d 896 (6th Cir.1991), *cert. denied,* 503 U.S. 987, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). Here, Defendants do not introduce any evidence that the assessments are incorrect. Accordingly, construing the evidence in the light most favorable to Plaintiff, the non-moving party, the court finds that summary judgment is not warranted on this ground. Defendants failed to show that there is no genuine issue of material fact that the assessments are invalid, and that they are entitled to judgment as a matter of law.

2. *Timeliness of Assessments in Tax Years 1982, 1983, 1984, and 1985*

Defendants argue that the IRS cannot establish that its underlying assessments against Stephen and Barbara Anne Rogers for tax years 1982, 1983, 1984, and 1985 were timely. For the foregoing reasons, the court finds that Defendants' argument is not well-taken.

a. *Tax Year 1982*

■ Stephen and Barbara Rogers filed their joint income tax return for tax year 1982 on August 18, 1983. Stephen and Barbara Anne Rogers owned a partnership interest in CD–EMC Equipment Leasing in 1982 and filed a petition with the United States Tax Court after a dispute arose concerning the tax treatment of certain items that passed through from the partnership to them. On February 14, 1994, the Tax Court entered an Agreed Decision in *Stephen D. Rogers and Bar-bara Anne Rogers v. Commissioner of Internal Revenue,* U.S. Tax Court, Docket No. 1046–90 ("Agreed Decision"), providing that there was a deficiency in their income tax for the tax year 1982 in the amount of $11,455 and related tax motivated interest under IRC § 6621(c), amounting to $29,894.43. (Bertoldo Suppl. Decl., Ex. 21.) After the entry of the Agreed Decision, Plaintiff had 150 days to assess the amount, 90 days until the Tax Court decision became final and 60 days thereafter. *See* IRC § 6503(a)(1). On May 25, 1994, well within 150 days of the Agreed Decision, Plaintiff properly gave Notice and Demand for Payment to Stephen and Barbara Rogers for tax year 1982 in the total amount of $41,349.43, reflecting a quick assessment amount of $11,455.00 and restricted interest assessed amount of $29,894.43. After entering an Agreed Decision in the Tax Court, Plaintiff argues that Defendants cannot now argue that the statute of limitations had run when the Agreed Decision was entered, as this goes to the heart of claim preclusion. *See, e.g., Armco Steel Corp. v. United States,* 74–1 U.S. Tax Case (CCH) P9428, 1974 WL 557 (S.D.Ohio 1974) (holding that the agreed settlement in a tax case was a valid judgment on the merits for purposes of res judicata and that the taxpayer's present action, which was based on different claims but for the same income tax purposes, was barred by the doctrine of res judicata). Accordingly, construing the evidence in the light most favorable to Plaintiff, summary judgment is not warranted on this ground. Defendants have failed to show that there is no genuine issue of material fact that the assessment for tax year 1982 is invalid, and that they are entitled to judgment as a matter of law.

b. *Tax Years 1983, 1984, and 1985*

■ Plaintiff seeks recovery from the Rogers for taxes attributable to partner-

ship income that passed through to the Rogers for tax years 1983, 1984, and 1985. Defendants argue that there is an absence of evidence that the assessments against the Rogers for 1983, 1984, and 1985 were attributable to partnership income. (Defs.' Summ. J. Mot. at 21–22.) Even if that assertion could be established, Defendants state, there is an absence of evidence that the Rogers were assessed within the later of three years of the partnerships' filings, or that both the IRS and a person on behalf of the Rogers executed consents to extend the time to assess taxes attributable to these tax years, and that the Rogers were assessed within the periods of any such consents. (*Id.* at 22.)

In response, Plaintiff provides evidence to show that the assessments against the Rogers for 1983, 1984, and 1985 resulted from the tax treatment of certain items that passed through to the Rogers from both Aero Leasing (which flowed through to Stephen and Barbara Anne Rogers as partners in the partnership) and adjustments to Park Leasing (which flowed through to its partner, Aero Leasing, and then to Stephen and Barbara Anne Rogers) (*See* Bloom. Suppl. Decl., Exs. K, N.) Specifically, Plaintiff introduces Form 4549, which was sent to Stephen Rogers and later produced in discovery, showing the relation of the adjustments in the partnership to the adjustments to the claim deductions for losses on Stephen and Barbara Anne Rogers' 1983, 1984, and 1985 tax returns. (Pl.'s Opp'n, Exs. 13, 14, and 15.)

Plaintiff then produces evidence that the partnership income assessments were timely. First, Plaintiff correctly notes that the timeliness of the assessments at issue is controlled by IRC Section 6229(d)(1), which provides a suspension of the time to assess for up to one year after a Tax Court proceeding becomes final. The IRS maintains, and Defendants do not dispute, that there are currently ongoing Tax Court proceedings with Aero Leasing Associates in the Tax Court regarding tax years 1983, 1984, and 1985.

Additionally, Plaintiff produces evidence that the statute of limitations for 1983, 1984, and 1985 was extended by consent of Kent Klineman ("Klineman"), the Tax Matters Partner of both Park Leasing and Aero Leasing, pursuant to 26 U.S.C. § 6229(b)(1)(B). (*See* Pl.'s Opp'n, Ex. 16.) The Aero Leasing consent provides that "if a notice of Final Partnership Administrative Adjustment is sent to the partnership, the time for assessing the tax for the period(s) stated in the notice of Final Partnership Administrative Adjustment will not end until 1 year after the date on which the determination of partnership items becomes final." (*Id.*) Because the Commissioner issued a Final Partnership Administrative Adjustment that was sent to Klineman, (Bloom Decl. ¶ 32), the time for assessment was extended. A Closing Agreement signed by Stephen and Barbara Anne Rogers was accepted by the IRS on July 22, 1994, in which the parties agreed to the limitation of losses flowing from Aero. (Pl.'s Opp'n, Ex. 11.) After the partnership items became nonpartnership items as a result of the Closing Agreement, the resulting assessments were timely made within one year. (*See* Pl.'s Opp'n, Ex. 4.)

Defendants do not provide any evidence to support their position that the tax assessments are untimely. Rather, they attempt to strike the declarations of Bloom, Bertoldo, and Ambuehl for the reasons stated above in the Motion to Strike. (Defs.' Reply at 11–13.) As stated above in connection with Defendants' Motion to Strike, the court finds Defendants' arguments that the declarations should be stricken lack merit. Accordingly, construing the evidence in the light most favor-

able to Plaintiff, the court finds that summary judgment is not warranted on this ground. Defendants failed to show that there is no genuine issue of material fact that the assessments for tax years 1983, 1984, and 1985 were untimely, and that Defendants are entitled to judgment as a matter of law.

### c. 1991

Defendants do not dispute that the 1991 assessment was timely. In any event, Plaintiff produced proof of the timely Certificate of Assessment on Stephen Rogers for tax year 1991. (*See* Pl.'s Opp'n, Ex. 8.)

### 3. Time for Collecting the Levy on Rogers' Pension Plan for Tax Year 1991

 Defendants argue that the IRS cannot seize Stephen Rogers's Pension Plan interests pursuant to an alleged April, 1993, Notice of Levy because the time for collection has expired. Plaintiff correctly points out, however, that IRC § 6502(a) only requires that a levy be made within ten years of the assessment. Here, a notice of federal tax levy was served on the Pension Plan on April 7, 1993, well within the ten-year period required by § 6502(a). As soon as the election to take under the pension is made, Plaintiff is entitled to payment under its levy. Accordingly, construing the evidence in the light most favorable to Plaintiff, the court finds that summary judgment is not warranted on this ground. Defendants have failed to establish that there is no genuine issue of material fact that the time for collecting the 1993 levy has expired, and that they are entitled to judgment as a matter of law.

### 4. Prerequisites to Each of Its Alleged Tax Liens

Defendants argue that Plaintiff failed to establish that all the prerequisites to each of its alleged tax liens have been met. As previously discussed and shown by the Certificates of Assessments and Payments for the years at issue, Defendants have produced evidence that each of the assessments in this suit were properly and timely made. (*See* Pl.'s Opp'n, Exs. 3, 4, 5, 6, and 8.) Furthermore, as shown by the Declaration and Supplemental Declaration of Alan Ambuehl, a Notice and Demand was made for each of the assessments, and Stephen and Barbara Anne Rogers failed to fully pay those assessments. Therefore, statutory liens in favor of Plaintiff arose, pursuant to IRC § 6321, on all property and rights to property of Stephen and Barbara Anne Rogers, including the Pension Plan interests at issue. The Pension Plan was served with notice of the levies for the years at issue. (*See* Defs.' Reply, Ex. I–3.) Accordingly, construing the evidence in the light most favorable to Plaintiff, the court finds that summary judgment is not warranted on this ground. Defendants have failed to show that there is no genuine issue of material fact that Plaintiff failed to establish that the prerequisites to each of its alleged tax liens have been met, and that they are entitled to judgment as a matter of law.

### 5. Effect of the Rogers' Bankruptcies on their Pre–Petition Tax Liabilities

Defendants argue that the Bankruptcy Court discharged each of the assessments and released the Rogers from personal liability. (*See* Defs.' Summ. J. Mot. at 26.) The IRS does not dispute this discharge of personal liability. Rather, Plaintiff contends that Defendants' bankruptcy discharges did not relieve their Pension Plan interests from *in rem* liability. In *Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), the Court held that "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely an action against the debtor *in personam*—while leaving intact another—namely an action against the debtor *in rem*." Here, the IRS argues that it

can establish *in rem* liability on the Pension Plan interests under IRC § 6321, rather than against the Rogers personally, because notice and demand was made for the tax years at issue, and Stephen Rogers and Barbara Anne Rogers failed to pay their tax liability. Accordingly, construing the evidence in the light most favorable to Plaintiff, the court finds that summary judgment is not warranted on this ground. Defendants failed to show that there is no genuine issue of material fact that they have no liability as a result of the bankruptcies, and that they are entitled to judgment as a matter of law.

### 6. Exclusion v. Exemption of the Rogers' Pension Plan Interests from the Bankruptcy Estates

Defendants argue as if the Pension Plan interests of Stephen Rogers and Barbara Anne Rogers are exactly the same, but Plaintiff correctly maintains that Stephen Rogers and Barbara Anne Rogers have distinct interests in the Pension Plan. (*See* Pl.'s Opp'n at 25.) The court will therefore separately address Stephen Rogers's and Barbara Anne Rogers's distinct interests.

### a. Exclusion v. Exemption of Stephen Rogers's Pension Plan Interests from His Bankruptcy Estate

■■■ Stephen Rogers argues that the Pension Plan interests were exempted from his bankruptcy estate. (Defs.' Summ. J. Mot. at 26–28.) However, Plaintiff argues that the Pension Plan interests were excluded, not exempted, from Stephen Rogers's bankruptcy estate. (*See* Pl.'s Opp'n at 26–27.) The distinction is important because exempted property is only subject to a federal tax lien if a Notice of Federal Tax Lien is properly filed at the time of the petition for bankruptcy under 11 USCS [BC] § 522(c)(2)(B). However, BC § 522(c)(2)(B) becomes irrelevant if the Pension Plan interests were excluded rather than exempted. Property excluded from the estate would be subject to an unfiled tax lien. *In re Rich,* 197 B.R. 692, 695 (Bankr.D.Okla.1996).

In arguing that his Pension Plan interests were exempted from the bankruptcy estate, Stephen Rogers relies on *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), for the proposition that "the validity of the debtor's claimed exemptions cannot be contested after the period for objecting thereto has expired, even if the debtor had no colorable basis for claiming the exemption." (Defs.' Mot. Summ. J. at 27.) However, Plaintiff argues that *Taylor* is distinguishable from the instant case because *Taylor* dealt with a debtor who claimed an exemption of potential proceeds from a discrimination suit, which became property of the estate under BC § 541 upon the debtor's filing of his bankruptcy petition. As indicated below, *Taylor* is not relevant because the ERISA Pension Plan interests here are excludable, not exempt, property.

■■■ It is a fundamental rule that "no property can be exempted (and therefore immunized) unless it first falls *within* the bankruptcy estate." *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) (emphasis in original). Furthermore, it is well-established that a debtor's interest in an ERISA qualified pension plan is not included within the bankruptcy estate. *See Patterson v. Shumate,* 504 U.S. 753, 757–58, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). The anti-alienation provision in an ERISA qualified pension plan, which is required by ERISA at 29 U.S.C. § 1056(d), allows a pension interest to be excluded from property of the bankruptcy estate of the beneficiary under BC § 541(c)(2)(B). *Id.* at 765, 112 S.Ct. 2242; *see also In re Carbaugh,* 278 B.R. 512, 520 (10th Cir. BAP 2002) ("By definition, monies within an ERISA-qualified trust fall within the exception established

in [BC] § 541(c)"); *In re Yuhas*, 104 F.3d 612, 614 (3d Cir.1997) (Under *Patterson*, a debtor's interest in an ERISA-qualified plan is "completely excluded from the bankruptcy estate"); *United States v. Snyder*, 343 F.3d 1171 (9th Cir.2003) (holding that pension interest was excluded from the bankruptcy estate and could not be used to give the IRS a secured claim, leaving the IRS to pursue its lien interest in the property outside of the estate).

■ The Sixth Circuit has stated that, "[t]he Supreme Court appears to have drawn a bright line rule concerning the alienability of pension benefits: they may not be alienated either voluntarily or involuntarily, inside or outside bankruptcy, or for equitable reasons." *Bell & Beckwith v. Society Bank*, 5 F.3d 150, 152 (6th Cir. 1993).[1] Accordingly, construing the evidence in the light most favorable to Plaintiff, the court finds that summary judgment is not warranted on this ground. Defendants fail to show that there is no genuine issue of material fact that Stephen Rogers's Pension Plan interests were exempted from the bankruptcy estate, and that Defendants are entitled to judgment as a matter of law.

### b. Exclusion v. Exemption of Barbara Anne Rogers's Pension Plan Interests from Her Bankruptcy Estate

While Stephen Rogers has a direct beneficial interest in the Major League Baseball Players Trust, which holds the Pension Plan benefits, Barbara Anne Rogers has an interest that is given to her by a Qualified Domestic Relations Order ("QDRO"). Although an ex-spouse who has an interest in a Pension Plan by a QDRO holds a distinct interest, courts have shielded ex-spouses by excluding their QDRO property right from the bankruptcy estate. *See, e.g., In re Nelson*, 322 F.3d 541, 545 (8th Cir.2003); *In re Lalchandani*, 279 B.R. 880, 886 (1st Cir.BAP 2002). The only case brought to this court's attention by the parties which includes a QDRO in the bankruptcy estate is *In re Hageman*, 260 B.R. 852 (Bankr. S.D.Ohio 2001.) However, the Eighth Circuit found *In re Hageman* to be wrongly decided in light of *Boggs v. Boggs*. The IRS submits, and this court agrees, that *In re Hageman* was wrongly decided.

■ The *In re Nelson* court focused on the provisions in ERISA under 29 U.S.C. §§ 1056(d)(3)(J) & (K), which gives the holder of a QDRO beneficiary status. *See* 322 F.3d at 544. *In re Nelson*, 322 F.3d at 544–45, also focused on the Supreme Court decision in *Boggs v. Boggs*, 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997), from which it quoted as follows: "[i]n creating the QDRO mechanism Congress was careful to provide that the alternate payee . . . is to be considered a plan beneficiary." Under such circumstances, the amount owed to the spouse would not be exempt

**1.** The anti-alienation provisions in ERISA-qualified pension plans are not enforceable against the IRS. *See Snyder*, 343 F.3d at 1174 (citing *McIntyre v. United States (In re McIntyre)*, 222 F.3d 655, 660 (9th Cir.2000); *United States v. Sawaf*, 74 F.3d 119, 123–25 (6th Cir.1996); *Shanbaum v. United States*, 32 F.3d 180, 183 (5th Cir.1994); *Anderson v. United States (In re Anderson)*, 149 B.R. 591, 595 (9th Cir.BAP1992)). As the *Snyder* court, 343 F.3d at 1174–75, explains:

ERISA expressly provides that it "shall [not] be construed to alter, amend, modify, invalidate, impair, or supercede any law of the United States," 29 U.S.C. § 1144(d), including federal tax law. Section 6321 of the Internal Revenue Code provides that the United States shall have a lien "upon *all* property and rights to property, whether real or personal," belonging to any person liable to pay any tax who neglects or refuses to do the same after demand, 26 U.S.C. § 6321 (emphasis added); and § 6331 authorizes the IRS to levy upon all property or rights to property of such person in order to execute the lien. *Id.* § 6331(a).

property, but excluded property. In light of the provision of 29 U.S.C. §§ 1056(d)(3)(J) & (K) and the decision in *Boggs* treating the holder of a QDRO as holding a beneficial interest in the pension trust, it follows that Barbara Anne Rogers's interests were also excluded from the bankruptcy estate. Accordingly, construing the facts in the light most favorable to Plaintiff, the court finds that summary judgment is not warranted on this ground. Defendants have failed to show that there is no genuine issue of material fact that Barbara Anne Rogers's interest in the Pension Plan were exempted from the bankruptcy estate, and that Defendants are entitled to judgment as a matter of law.

### 7. Significance of Exclusion of Pension Plan Interests from the Bankruptcy Estates

 As the Pension Plan interests at issue were excluded, rather than exempted, from the bankruptcy estates, as discussed above, it is of no import that Stephen Rogers and Barbara Anne Rogers listed their Pension Plan interests as exempt. Thus, the provision of BC § 522(c)(2)(B) stating that exempt property is only subject to federal tax lien if a Notice of Federal Tax Lien is properly filed at the time of the petition for bankruptcy is irrelevant.

#### a. Failure to file a Notice of Federal Tax Lien Before the Bankruptcies

 Defendants argue that any IRS tax lien against the Rogers' Pension Plan interests related to the assessment for 1984 is invalid because it was not properly recorded prior to the Rogers' bankruptcies. (*See* Defs.' Summ. J. Mot. at 28.) Defendants cite *U.S. v. Speers*, 382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965), for the proposition that "a federal tax lien, unrecorded as of the time of a debtor's

bankruptcy, is invalid against the bankruptcy trustee and reduces the IRS' tax claim to the status of an unsecured claim." In *Speers*, the court addressed the powers of the trustee and the scope of Bankruptcy Act § 70(c), currently BC § 544(a)(1). The court held that, " § 6323 and § 70c entitle the trustee to prevail over unrecorded federal tax liens." *Speers*, 382 U.S. at 275, 86 S.Ct. 411. As such, Defendants argue that the federal tax lien, which was unrecorded at the time of bankruptcy, was invalid as against the trustee. *Id.*

Under *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), the Court held that the application of BC § 544(a) to allow the trustee to avoid a transfer of property of the debtor must be read as a transfer of property of the estate. In *Begier*, 496 U.S. at 58, 110 S.Ct. 2258, the Supreme Court defined "property of the debtor" as "property of the estate" when considering the scope of the terms within the analogous transfer avoidance provision contained in BC § 547(b):

> Because the purposes of the avoidance provision is to preserve property includable within the bankruptcy estate—the property available for distribution to creditors—"property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been property of the estate had it not been transferred before the commencement of the bankruptcy proceedings.

*See also FDIC v. Hastie*, 2 F.3d 1042, 1044 (10th Cir.1993) (reading property of the debtor as property of the estate in BC § 544(a)(1)). Therefore, Defendants' argument resting on the transfer avoidance powers of the trustee is not well-taken. It is irrelevant what power the trustee has over property of the estate because this court has determined that Pension Plan

interests were excluded from the estate. Accordingly, construing the evidence in the light most favorable to Plaintiff, summary judgment is not warranted on this ground. Defendants have failed to show there is no genuine issue of material fact that the IRS tax lien against the Rogers' Pension Plan interests related to the assessment for 1984 is invalid, and that Defendants are entitled to judgment as a matter of law.

### b. Listing the Pension Plan Interests as Exempt Property

Defendants also cite *Suarez v. U.S.*, 182 B.R. 916 (S.D.Fla.1995), for the proposition that BC § 522(c)(2)(B) requires Notices of Federal Tax Liens to be filed before the filing of a bankruptcy petition in order to attach to property of the estate that is exempted by the debtor. (*See* Defs.' Summ. J. Mot. at 29.) Plaintiff asserts that this argument is also inconsequential because the Pension Plan interests were excluded property—not exempt property. Specifically, BC § 522(b) by its very terms limits the application of the exemption provision to the property of the bankruptcy estate: "Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection." Accordingly, construing the evidence in the light most favorable to Plaintiff, the court finds that summary judgment is not warranted on this ground. Defendants have failed to show that there is no genuine issue of material fact that the tax liens did not attach to the Pension Plan interests, and that they are entitled to judgment as a matter of law.

### c. Notice of Federal Tax Lien not Recorded Prior to Bankruptcy Filings

 Finally, Defendants argue that the federal tax lien for 1984 did not attach to the Pension Plan interests because a Notice of Federal Tax Lien was not re-

corded prior to the bankruptcy filings. Plaintiff asserts that Defendants' argument confuses the federal tax lien that arises statutorily under IRC § 6321 with the Notice of Federal Tax Lien that must be filed in accordance with IRC § 6323 to gain priority over certain competing claimants. (*See* Defs.' Summ. J. Mot. at 28.) The purpose of the Notice of Federal Tax Lien is to give the IRS priority over purchasers and certain third-party creditors, including holders of properly recorded judgment liens, and against the trustee in a Chapter 7 bankruptcy with regard to property of the estate. As stated previously, the Pension Plan interests were excluded from becoming property of the bankruptcy estates. As a result, the federal tax liens that arose pursuant to IRC § 6321 prior to the bankruptcy filings survived *in rem* on the Pension Plan interests regardless of whether or not Notices of Federal Tax Liens were also filed. Accordingly, construing the evidence in the light most favorable to Plaintiff, the court finds that summary judgment is not warranted on this ground. Defendants has failed to show that there is no genuine issue of material fact that the federal tax lien for 1984 did not attach to the Pension Plan interests, and that they are entitled to judgment as a matter of law.

### 8. Extinguished Liens

 Defendants argue the liens are extinguished, regardless of whether the Pension Plan interests were exempted or excluded from the Rogers' bankruptcy estates. (*See* Defs.' Reply at 1.) For the following reasons, the court finds that Defendants fail to show that there is no genuine issue of material fact that the liens are extinguished, and that they are entitled to judgment as a matter of law.

### a. Lien for Tax Year 1982

The IRS recorded a Notice of Federal Tax Lien for tax year 1982, with an assess-

ment date of April 24, 1994, against the Rogers on March 13, 1995, prior to the Rogers' bankruptcies. (*See* Defs.' Mot. Summ. J, Ex. F.) The Notice of Federal Tax Lien states:

> IMPORTANT RELEASE INFORMATION: For each assessment listed below, unless notice of lien is re-filed by the date given in Column (e), this notice shall operate as a certificate of release as defined in IRC 6325(a).

(*Id.*) The Internal Revenue Code, 26 U.S.C. § 6325(a), defines a certificate of release as a release of a lien imposed with respect to a tax. Section 6325(f) explains that a certificate of release "shall be conclusive that the lien referred to in such certificate is extinguished." Defendants point to column (e) of the March 13, 1995, Notice of Federal Tax Lien, which provides that the last day for refiling the Notice of Federal Tax Lien was May 24, 2004. (*See* Defs.' Mot. Summ. J., Ex. F.) No Notice of Federal Tax Lien for 1982 was re-filed on or before May 24, 2004. Defendants therefore conclude that the March 13, 1995, Notice of Federal Tax Lien for tax year 1982 operated as a certificate of release on May 25, 2004, and the lien for tax year 1982 is extinguished. (*See* Defs.' Reply at 1.)

Plaintiff argues that Defendants' conclusion is incorrect. The record shows that on June 21, 2004, the IRS filed another Notice of Federal Tax Lien for tax year 1982, for the stated purpose of correcting the date of assessment on the original Notice of Federal Tax Lien, which read April 24, 1994, to the correct date of May 25, 1994, thus changing the re-filing date to June 25, 2004, pursuant to IRC § 6323(g)(3)(A).[2] (*See* Defs.' Summ. J. Mot., Ex. G.)

Thereafter, on August 13, 2004, the IRS recorded two Certificates of Release for the 1982 tax year. (*See id.*, Ex. I.) However, on December 28, 2004, the IRS filed a Revocation of Certificate of Release of Federal Tax Lien for the assessment date April 24, 1994 for the 1982 tax year, stating that it mistakenly allowed a Notice of Federal Tax Lien filed against Stephen Rogers and Barbara Anne Rogers to operate as a certificate of release. (*See id.*, Ex. J.) The automatic release of the Notice of Federal Tax Lien, the basis for Defendants' argument that the lien for tax year 1982, was extinguished, was thus revoked, and the lien reinstated as provided under IRC § 6325(f)(2).

### b. Liens for Tax Years 1983, 1984, 1985, and 1991

■ Defendants make similar arguments regarding liens related to tax years 1983, 1984, 1985, and 1991. (*See* Defs.' Reply at 2–5.) These arguments also fail because the IRS filed Revocations of all Releases at issue, as well as Revocations for the Notice of Federal Tax Lien that it mistakenly allowed to operate as certificates of release. Plaintiff maintains that the liens on the Pension Plan interests were erroneously released, and that the releases were then properly revoked. (*See* Pl.'s Opp'n at 30.) Where liens are erroneously released, IRC § 6325 provides that the release may be revoked and the lien reinstated. Defendants argue that the bankruptcy discharge prevents reinstatement of the lien. (*See* Defs.' Mot. Summ. J. at 33.) The discharge, however, prevents creditors from collecting liabilities *in personam.* It does not prevent the statutory lien from attaching *in rem.* Furthermore, the revocation is not equivalent to

---

**2.** IRC § 6323(g)(3)(A) provides, "Required refiling period. In the case of any notice of lien, the term 'required refiling period' means—

(A) the one-year period ending 30 days after the expiration of 10 years after the date of the assessment of the tax ..." IRC § 6323.

filing a new lien on post-petition property, but simply reinstates the lien on the continuing *in rem* liability of the Pension Plan Interests.

Defendants focus on the language in IRC § 6325(f)(2) providing that the reinstated lien shall have the "same force and effect, *as of its reinstatement*, as a lien imposed by 26 U.S.C. § 6321." (*See* Def. Mot. Sum. Jdgmt. at 33. (Emphasis in original)) Section 6325(f)(2) states:

(F) Effect of certificate.

(2) Revocation of certificate of release or nonattachment. If the Secretary determines that a certificate of release or nonattachment of a lien imposed by section 6321 [26 USCS § 6321] was issued erroneously or improvidently, or if a certificate of release of such lien was issued pursuant to a collateral agreement entered into in connection with a compromise under section 7122 [26 USCS § 7122] which has been breached, and if the period of limitation on collection after assessment has not expired, the Secretary may revoke such certificate and reinstate the lien—

(A) by mailing notice of such revocation to the person against whom the tax was assessed at his last known address, and

(B) by filing notice of such revocation in the same office in which the notice of lien to which it relates was filed (if such notice of lien had been filed).

Such reinstated lien (i) shall be effective on the date notice of revocation is mailed to the taxpayer in accordance with the provisions of subparagraph (A), but not earlier than the date on which any required filing of notice of revocation is filed in accordance with the provisions of subparagraph (B), and (ii) shall have the same force and

effect (as if such date), until the expiration of the period of limitation on collection after assessment, as a lien imposed by section 6321 [26 USCS § 6321] (relating to lien for taxes). IRC § 6325.

Defendants read this to require that the IRS must issue a new notice and demand for the personal liability of the debtors, but this reads too much into § 6325(f)(2). Plaintiff correctly argues that this language simply means that a reinstated lien under § 6325(f)(2) will have the same force and scope as the erroneously released lien which arose under § 6321. The underlying personal liability is not being reinstated, simply the *in rem* liability on the Pension Plan interests. The statute provides that the lien is reinstated, which is different from the creation of a new lien that would arise only after assessment, demand, and refusal to pay. The language contained in 26 CFR § 301.6325–1(f)(iii)(b), which states that the revocation of the released lien does not retroactively reinstate the Notice of Federal Tax Lien, simply means that the United States cannot step back into the same priority it previously had among secured creditors.

### c. Failure to Re-file the Notice of Federal Tax Liens in New Jersey

 Defendants argue that, pursuant to IRC § 6323, Plaintiff's failure to re-file the 1985, 1987, and 1991 Notices of Federal Tax Liens in Mercer County, New Jersey, the county where Stephen Rogers now resides, prevents the attachment of the statutory tax liens that arose under § 6321 to the Pension Plan interests. However, Plaintiff correctly argues that the failure to re-file the Notice of Federal Lien in the county where the taxpayer now resides does not effect a self-release of the underlying IRC § 6321 federal tax lien. Rather, failure to file in the new location as provid-

ed by IRC § 6323 affects the priority, not the attachment, of the lien, and the effect of Plaintiff's failure to re-file the Notices of Federal Tax Liens is limited to the ability of Plaintiff to collect ahead of certain third-party creditors described in IRC § 6323. The failure to re-file in the new location, however, does not prevent the attachment of the statutory tax liens to the Pension Plan interests.

### 9. Value of the Federal Tax Liens

#### a. After–Acquired Property vs. Post–Petition Property

■■■ Defendants contend that if any tax liens remain, they have no value. (*See* Defs.' Summ. J. Mot. at 36.) Defendants cite *Dishong v. Internal Revenue Service,* 188 F.R. 51 (M.D.Fla.1995), as authority for their argument that a federal tax lien based on dischargeable taxes does not survive to attach post-petition to a debtor's after-acquired property. (*See id.* at 36.) Plaintiff correctly argues that Defendants have confused the rule on after-acquired property with attachment of post-petition property. (*See* Pl.'s Opp'n at 32.) Here, Stephen Rogers was fully vested and had accrued his entire Pension Plan interests at the time that he filed for bankruptcy, therefore, his Pension Plan interests were not after-acquired property.

■■■ Additionally, Plaintiff asserts that Defendants' argument that the value of the liens was reduced to the value of the collateral in the bankruptcy estate does not apply here because the property at issue was not part of the bankruptcy estate, and it thus did not give the IRS a secured claim in bankruptcy. Accordingly, construing the evidence in the light most favorable to Plaintiff, the court finds that summary judgment is not warranted on this ground. Defendants fail to show that there is no genuine issue of material fact that any tax liens that remain have no

value, and that Defendants are entitled to judgment as a matter of law.

#### b. Accrual of Interest and Penalties on the Tax Liabilities

■■■ Defendants argue that the values of any remaining liens recorded by prepetition Notice of Federal Tax Liens are limited by the amounts set forth in those Notices. Plaintiff responds that a foreclosure of the federal tax liens would result in the foreclosure of not only the amounts listed on the filed Notices of Federal Tax Liens, but also of interest and penalties that have subsequently accrued on the assessments listed. Since, as Plaintiff asserts, the Pension Plan interests were not property of the bankruptcy estate, there is no statutory justification for altering the normal rule that a statutory lien secures accruals of interest and penalties on the assessed tax. Section 6321 provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (*including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto*) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

(Emphasis added). The amount of the lien under § 6321 extends to accruals beyond the date of assessment. *See, e.g., United States v. Grable,* No. 1:90 CV 971, 1992 WL 459590, *7, 1992 U.S. Dist. LEXIS 18219, at *19 (W.D.Mich. Nov. 18, 1992) (awarding IRS $48,536.97 in past income tax due plus statutory accruals of interest); *United States v. Parks,* No. 87C–0761S, 1991 WL 115775, at *6, 1991 U.S. Dist. LEXIS 7061, at *16 (C.D. Utah April 26, 1991) (awarding the IRS the amount of $69,449.77, plus accrued but unassessed statutory additions).

### c. Appreciation in the Value of Pension Plan Interests

■■■ Defendants argue that any IRS liens do not attach to post-petition appreciation in Stephen and Barbara Anne Rogers' Pension Plan interests. Plaintiff claims that there is no reason to limit the federal tax lien from attaching appreciation in the value of the Pension Plan interests to satisfy the Rogers' tax deficiencies when Stephen Rogers had already served his 11 years by 1985, was fully vested, and had a non-contingent right to the pay-out once he reached normal retirement age. (*See* Pl.'s Opp'n at 34.) Plaintiff argues that a statutory lien attaches to interests, not to value. In *Englander v. First Union Nat'l Bank (In re Englander)*, 202 B.R. 326, (Bankr.D.Fla.1995), the Bankruptcy Court held that a bank was entitled to interest that accrued on the policy after the petition date. 202 B.R. at 330. The *Englander* Court reasoned:

> [T]he Loan and Assignment [at issue] were executed by the Debtor prior to the [bankruptcy] Petition Date. Therefore, the lien arising from the Assignment encumbering the Policy does not extend to any interest of the Debtors or their estate acquired after the Petition Date unless the exception for "proceeds, product, offspring, or profits" set forth in Section 552(b) is applicable. The Eleventh Circuit in [*First Nat'l Bank of Atlanta v. Willis (In Jones)*, 908 F.2d 859 (11th Cir.1990) ] specifically has held that a secured creditor's lien on the cash value of life insurance policies does not extend to post-petition premiums paid. As such, [the bank's] lien does not en-

cumber the Payment Appreciation. However, consistent with the exception of Section 552(b)(1), [the bank] is entitled to receive any interest accrued on the cash value of the Policy as of the Petition Date—the Interest Appreciation.

*Id.* Here, Stephen Rogers was already fully vested in the Pension Plan prior to his bankruptcy petition date. Therefore, construing the facts in the light most favorable to Plaintiff, summary judgment is not warranted on this ground. Defendant has failed to show there is no genuine issue of material fact that Plaintiff is not entitled to the appreciation value of the Pension Plan interests.

### 10. Robin Rogers's Widows Benefits or Survivor Annuity

■■■ Defendants argue that any remaining liens cannot be foreclosed against the Pension Plan interest of Robin Rogers, Stephen Rogers's current wife, citing *Toledo Plumbers & Pipefitters Ret. Plan & Trust v. United States*, No. 3:90 CV 7513, 1991 WL 172932, 1991 U.S. Dist. LEXIS 9242 (D.Ohio 1991), in support of their position. In *Toledo Plumbers*, the IRS issued a levy on the pension plan funds of a taxpayer and his spouse as the result of the taxpayer's alleged tax deficiency. *Id.* at 1991 WL 172932, *2, 1991 U.S. Dist. LEXIS 9242, *4. The IRS sought a lump sum distribution of the retirement fund. *Id.* The taxpayer argued in part that the levy was invalid because, pursuant to ERISA, 29 U.S.C. § 1055, he had no right to request and receive a lump-sum distribution of the annuity funds without his wife's consent.[3] The *Toledo Plumbers*

---

**3.** Title 10 U.S.C. Section 1055(g)(1) provides in pertinent part:

(1) A plan may provide that the present value of a qualified joint and survivor annuity or a qualified preretirement survivor annuity will be immediately distributed if such value does not exceed the amount that can be distributed without the participant's con-

sent under section 203(e) [29 USCS § 1053(e) ]. No distribution may be made under the preceding sentence after the annuity starting date unless the participant and the spouse of the participant (or where the participant has died, the surviving spouse) consent in writing to such distribution.

court held that the IRS could not recover the lump sum distribution because the IRS could not levy the funds of the taxpayer's spouse, who was an innocent party. *Id.* at 1991 WL 172932, *6–7, 1991 U.S. Dist. LEXIS 9242, *15–16.

However, Plaintiff, relying on *Travelers Insurance Company v. Rattermann*, No. C–1–94–466, 1996 WL 149332, 1996 U.S. Dist. LEXIS 2001 (S.D.Ohio Jan. 12, 1996), argues that *Toledo Plumbers* is distinguishable from the instant case. Plaintiff argues that the holding in *Travelers* was premised upon the fact that the IRS was seeking a lump sum distribution of the entire proceeds of the pension plan, whereas the IRS here is only seeking monthly payments due to Stephen Rogers, because the Pension Plan does not allow a lump sum distribution. For the foregoing reasons, the court finds that Plaintiff's argument is well-taken.

In *Travelers*, the IRS issued a levy against a taxpayer's pension plan interests. Citing *Toledo Plumbers*, the taxpayer and his wife in *Travelers* argued that "the IRS is prohibited from levying against the [pension plan], which is held for the benefit of both [the taxpayer and his wife], because [the wife] is an innocent party who has not consented to the levy." *Id.* at 1996 WL 149332, *5–6, 1996 U.S. Dist. LEXIS 2001, *14. The *Travelers* court explained that the case before it was distinguishable from *Toledo Plumbers*:

> In this case, the IRS is seeking to attach only the monthly annuity payments as they become due and payable under the annuity contract to [the taxpayer] during his lifetime. It is not seeking a distribution of the entire annuity account and recognizes that [the taxpayer's spouse] has a survivorship interest in receiving annuity payments from the fund upon [the taxpayer's] death, with which it may not interfere. [The taxpayer's spouse] does not have an inter-

est in the annuity plan pursuant to a QDRO. Therefore, it appears the IRS levy on annuity payments to [the taxpayer] is not impinging on any of the annuity funds held for [the taxpayer's spouse's] benefit.

*Id.* at 1991 WL 172932, *7, 1991 U.S. Dist. LEXIS 9242, *16.

The court then held that the IRS could levy against the pension plan's payments to the taxpayer's husband without the spouse's consent because the taxpayer's spouse cannot claim a present interest in her husband's payments under ERISA or the pension plan contract. *Id.* at 1996 WL 149332, *6, 1996 U.S. Dist. LEXIS 2001, *19. The court explained its rationale as follows:

> Pursuant to the annuity contract, [the taxpayer's spouse] is considered a "contingent annuitant" entitled to receive upon her husband's death one-half of the monthly annuity amount payable to him during his lifetime. [The taxpayer's spouse's] interest in the annuity plan attaches only if she survives her husband. ERISA prohibits the participant in a joint and survivor annuity plan from waiving the qualified joint and survivor form of benefit or from obtaining distribution of the present value of the annuity without spousal consent. *See* 29 U.S.C. § 1055(c)(2) and § 1055(g). However, the spouse is not considered a plan participant, but rather a beneficiary under the plan. *See* 26 U.S.C. § 414(p)(8). Because a spouse is not a plan participant, ERISA's anti-alienation provision applies to preclude the participant from assigning benefits to his or her spouse unless the spouse is designated an "alternate payee" by way of a QDRO. *See* 26 U.S.C. § 414(p)(8); 29 U.S.C. § 1056(d)(3). Congress has only recognized the limited exception of a QDRO to provide for a plan participant's

spouse in the face of ERISA's anti-alienation provision. Because no QDRO was issued in this case permitting [the taxpayer's spouse] to receive all or a portion of the annuity benefits payable to her husband, she has no claim under ERISA to the payments made to [the taxpayer] during his lifetime.

The court finds that *Travelers* is persuasive authority in the instant case. Like the taxpayer's spouse in *Travelers*, Robin Rogers does not have a QDRO and thus has no direct interest in the Plan. Therefore, like the taxpayer's spouse in *Travelers*, Robin Rogers has no claim under ERISA to the payments made to Stephen Rogers during his lifetime. Rather, similar to the taxpayer's spouse in *Travelers* who was considered a "contingent annuitant," Robin Rogers is only entitled to a Widow's Benefit at the time of Stephen Rogers's death. Specifically, Robin Rogers may only receive a Widow's Benefit, diminished by whatever amount is paid to the ex-spouse under the QDRO. In fact, Section 11.7 of the Pension Plan contemplates that all of the Widow's Benefits could be transferred to the ex-spouse. (*See* Pl.'s Opp'n, Ex. 1.)

Accordingly, the court finds that summary judgment is not warranted on this ground. Defendants have failed to establish that there is no genuine issue of material fact that the IRS cannot levy against the Pension Plan payments to Stephen Rogers without Robin Rogers's consent, and that Defendants are entitled to judgment as a matter of law.

## IV. CONCLUSION

For the above-stated reasons, the court denies Defendants' Motion to Strike. (ECF No. 96.) The court grants in part and denies in part Plaintiff's Motion to Supplement Affidavits. (ECF No. 103.) The court denies Defendants' Motion for Summary Judgment. (ECF No. 81.)

The court will hold a pretrial conference in the within case on April 18, 2008, at 11:00 a.m. Trial shall commence on July 28, 2008, at 9:00 a.m. A separate trial order shall issue.

IT IS SO ORDERED.